IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

SKYWAY TOWERS, LLC,
a Delaware Limited Liability Company,

v.

CITY OF MCKINNEY, TEXAS, the CITY
COUNCIL OF THE CITY OF MCKINNEY,
TEXAS, and Rainey Rogers, La'Shadion
Shemwell, Scott Elliott, Rick Franklin,
Charlie Philips, Frederick Frazier, and
Mayor George Fuller in their official
capacities as members of the City Council of
the City of McKinney, Texas.

            Defendants.

CIVIL ACTION FILE NO. 4:20-cv-594

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**AND EXPEDITED TREATMENT**

Plaintiff, Skyway Towers, LLC ("Skyway"), by and through its undersigned attorneys, hereby files this Complaint against Defendants the City of McKinney, Texas, the City Council of the City of McKinney, Texas and Rainey Rogers, La'Shadion Shemwell, Scott Elliott, Rick Franklin, Charlie Philips, Frederick Frazier, and Mayor George Fuller in their official capacities as members of the City Council of the City of McKinney, Texas (collectively, the "City"), alleging as follows:

**<u>Nature of the Action</u>**

This action arises out of the City's unlawful denial of Skyway's application to construct a wireless telecommunications facility on a tract of land that is currently occupied by a church and is zoned "PD" – Planned Development District (Residential Uses). The City's denial is not

supported by substantial evidence contained in a written record and the denial effectively prohibits the provision of personal wireless service in the vicinity of the proposed facility. Accordingly, the City's denial of Skyway's application violates the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Communications Act" or "Act"), and Skyway is entitled to an order directing the City to grant Skyway's application for the proposed facility.

Plaintiff requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## Parties, Jurisdiction, and Venue

1.      Plaintiff, Skyway Towers, LLC ("Skyway"), is a Delaware Limited Liability Company authorized to transact business in Texas. Skyway constructs, owns, and manages wireless telecommunications facilities that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Texas and throughout the country.

2.      Defendant City of McKinney, Texas is a political subdivision of the State of Texas and is subject to the jurisdiction of this Court.

3.      Upon information and belief, Defendants Rainey Rogers, La'Shadion Shemwell, Scott Elliott, Rick Franklin, Charlie Philips, and Frederick Frazier are residents and domiciliaries of the Eastern District of Texas, and are members of the City Council of the City of McKinney, Texas, and are subject to the jurisdiction of this Court.

4.      Upon information and belief, Defendant George Fuller is a resident and domiciliary of the Eastern District of Texas, and the Mayor of the City of McKinney, Texas, and subject to the jurisdiction of this Court.

5.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 47 U.S.C. § 332(c)(7) because of the existence of federal questions arising under the

Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Communications Act"). The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 90(a)(2) in that Defendants reside in this judicial district, the proposed wireless communications facility would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## Statement of Facts

### Federal Statutory Control of Wireless Siting

7.      The Communications Act governs federal, state and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

8.      The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Communications Act may seek review in the federal courts, and that the courts shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

### The Wireless Communications Service Industry

9.      Skyway constructs, owns, and manages wireless communications facilities in Texas and elsewhere in the country. Skyway leases space on its facilities to national and regional wireless carriers who provide personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless consumers. In providing this valuable service to wireless carriers, Skyway is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with

the goals of the Communications Act. Skyway also leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies.

10.     T-Mobile provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in the State of Texas, including in the City of McKinney.

11.     T-Mobile is seeking to facilitate the maintenance and development of a wireless telecommunications network in keeping with the goals of the Communications Act.  T-Mobile uses licenses issued by the FCC pursuant to 47 U.S.C. § 151 to provide wireless service in and around McKinney, Texas.

12.     Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. §151.

13.     To meet these policy goals, T-Mobile seeks to provide myriad wireless services to local businesses, public safety entities and the general public.

14.     Likewise, to advance the national policies enumerated under 47 U.S.C. § 151 and repeatedly reiterated by the FCC, Skyway constructs towers and other wireless facilities that allow wireless carriers, such as T-Mobile, to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

15.     To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If Skyway is unable to construct a cell site within a specific geographic area, the wireless carriers it serves, such as T-Mobile, will not be able to provide service to the consumers within that area.

16.     To determine where a new wireless facility is required, radio frequency ("RF") engineers use various techniques, such as sophisticated computer programs and field testing, to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cell sites, and other factors. For a wireless network to perform, cell sites must be located, constructed and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, or if the cell sites around an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will be no reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

**The Proposed Facility & Application Process**

17.     Based upon research and analysis by RF engineers, T-Mobile determined that it has a gap in its ability to provide reliable service in the City of McKinney, Texas.

18.     This gap has been deemed significant by T-Mobile based on the demand for service, the population, and the traffic in the area, and must be remedied in order for T-Mobile to provide reliable service to the targeted area.

19.     T-Mobile's RF engineers identified a search ring around the targeted area of need within which a wireless communications facility would be required to remedy T-Mobile's gap in service.

20.     T-Mobile's RF engineers first investigated whether there were opportunities to co-locate antennas on existing wireless facility support structures, or other structures, within the search ring that could be used to remedy T-Mobile's service need.

21.     T-Mobile's engineering team found no existing towers or suitable structures within the search ring that could accommodate T-Mobile's antennas, or that could be reasonably altered to accommodate T-Mobile's antennas to achieve the coverage necessary to remedy T-Mobile's service needs.

22.     T-Mobile's RF engineers then provided Skyway with the search ring, and requested that Skyway develop a wireless communications facility somewhere within that area so that T-Mobile may remedy its significant gap in service.

23.     The majority of the search ring identified by T-Mobile is either zoned for residential use, or abuts residentially zoned properties.

24.     Section 146-137(d)(1) of the City Code prohibits freestanding communications support structures in residential zoning districts.   To allow a freestanding wireless communications facility, all non-residentially zoned properties within the search ring would require either a specific use permit pursuant to Section 146-137(d)(4) of the City Code, or Development regulations allowing for the facility if the property is zoned "PD" Planned Development.

25.     Skyway investigated suitable properties in the vicinity of the search ring that were appropriate for a wireless communications facility. An appropriate candidate would have to (1) fill the gap in service, (2) have the potential to comply with the local zoning requirements, or have exceptions therefrom approved by the City, (3) be leasable, and (4) be buildable (meaning the

property is physically suitable for construction). A property that does not meet each of those requirements is not a viable candidate.

26.     After a thorough investigation of the surrounding area, Skyway confirmed T-Mobile's assessment that there are no existing communications towers or structures that can accommodate collocation and remedy T-Mobile's significant gap in service.

27.     Skyway undertook a good faith analysis of potential locations for the wireless communications tower. Skyway evaluated and considered multiple potential sites.

28.     From its analysis, Skyway identified a tract of land located at 2705 Virginia Parkway, McKinney, Texas 75071, Collin County CAD Property ID # 2506196 (the "Subject Property") and concluded that it (1) is in the search area, and thus sufficient to remedy T-Mobile's significant gap in service; (2) is in a PD zone, which, based upon Staff's representation, would allow for a wireless communications facility with a change to the base zoning and the establishment of Development Regulations; (3) has a property owner willing to enter into a long-term lease for a portion of land for the construction of a wireless communications facility on commercially reasonable terms; and (4) is physically suitable for constructing and maintaining a wireless communications facility from a construction perspective, and is one of the larger tracts of land within the search ring.

29.     Alternative properties in the search ring were either not suitable for building, did not have a willing landlord, or were smaller tracts of land that presented the same or more zoning obstacles than the Subject Property.

30.     The Subject Property is zoned PD – Planned Development District for RS-84 Single Family Residential Uses pursuant to Ordinance No. 2001-08-089.  However, it is currently not used for residential purposes, but rather is occupied by a church.

31.     A wireless communications facility at the height proposed on the Subject Property is capable of satisfying T-Mobile's service needs, remedying its significant gap in service, and doing so in the means that is least intrusive on the values upon which the City's denial was based, and the values espoused in the City Code.

32.     The owner of the Subject Property is willing to lease a portion of the church property for the construction of a wireless communications facility, and agreed to lease terms with Skyway.

33.     Pursuant to the requirements of the City Code and recommendation of City Staff, in order to accommodate a wireless communications facility the Subject Property would need to be rezoned to "PD" – Planned Development District, Generally to Modify the Development Standards and to Allow a Telecommunications Tower.

34.     Because of the size, availability and zoning classifications of the properties in the search ring, including the Subject Property, a wireless communications facility that could meet T-Mobile's service needs would require adjustments to the set-back requirements set forth in the City Code for wireless communications facilities.

35.     Accordingly, beginning in 2018, Skyway approached the City to discuss how to accommodate a wireless communications facility on the Subject Property.

36.     Based upon the recommendation of City Staff regarding the appropriate process, on June 13, 2019, Skyway submitted its original application to the City.  Subsequently, and in response to input and requests from the City Staff, Skyway submitted revised application submittals on August 23, 2019, January 13, 2020, and May 11, 2020.

37.     Ultimately, after working with City Staff for approximately a year and a half, Skyway's application requested that the City to rezone the Subject Property from "PD – Planned

Development District for RS-84 Single-Family Residential Uses" to "PD – Planned Development District, Generally to Modify the Development Standards to Allow a Telecommunications Tower."

38.     Skyway's application proposes the installation of a stealth unipole telecommunications tower 95 feet tall with a 4 foot lightning rod for a total height of 99 feet.  All of the antennas and cabling are proposed to be contained on the interior of the unipole so that the tower itself will have the appearance of a "flagless flagpole" – referred to in the industry as a "slim stick."  The application proposes to enclose the ground based equipment compound behind an 8 foot high masonry wall designed as a decorative split-faced wall to be painted to match the existing Church.  Skyway agreed to increase the height of the wall from the originally proposed 6 feet to 8 feet at the request of the City Staff.  Skyway also agreed to include several Texas Sage shrubs (three feet in height at planting) around the exterior of the masonry compound wall.  The unipole and the ground compound surrounding it are proposed to be located on an island in the existing Church parking lot.  The facility described in this paragraph, that Skyway seeks to construct on the Subject Property shall be referred to as the "Proposed Facility".

39.     Pursuant to City Code Section 146-94, PD districts are intended for "design or development proposal[s] that do[] not strictly conform to the requirements" of the remainder of the City's zoning code.  Accordingly, as Staff explained, the zoning requirements in the City Code are not strict requirements in PD zones but can be considered advisory, or flexible, guidelines.

40.     City Code Section 146-137 establishes "guidelines for the siting of communications antennas, satellite dishes and support structures/towers."

41.     The expressed intent of City Code Section 146-137 is to:

(1)  Encourage the location of towers in non-residential areas;

(2)  Minimize the total number of towers throughout the community;

(3)  Encourage the joint use (collocation) of new and existing towers;

(4)  Protect the character and integrity of the historic districts; and

(5)  Enhance the ability of the providers of telecommunications services to provide such services to the community quickly, effectively, and efficiently.

42.     City Code Section 146-137(e) states that before a new free-standing wireless communication facility can be built an applicant must demonstrate that "no existing antenna support structure can accommodate the applicant's proposed antenna."  Evidence to support such a showing "may consist of any of the following:

(a)  No existing towers or structures are located within the geographic area, which meet the applicant's engineering requirements;

(b)  Existing towers or structures are not of sufficient height to meet the applicant's engineering requirements;

(c)  Existing towers or structures do not have sufficient structural strength to support the applicant's proposed antenna and related equipment; or

(d)  The applicant demonstrates that there are other limiting factors that render existing towers and structures unsuitable."

43.     City Code Section 146-137(e) also requires that "any proposed commercial wireless telecommunications service tower shall be designed structurally, electrically, and in all respects to accommodate both the applicant's antennas and comparable antennas for at least three additional users if the tower is over 100 feet in height or for at least two additional users if the tower is over 50 feet in height."

44.    In non-residential districts that allow free-standing wireless communications facilities by specific use permit, City Code Section 146-137(d)(4) establishes set-backs required for all "commercial antenna support structures."

45.    City Code Section 146-137(d)(4)(a)(2) provides that "[n]o antenna support structure shall be closer to any residential district boundary line or residential dwelling than a distance equal to twice the height of the support structure."

46.    City Code Section 146-137(d)(4)(b) provides that "[a] commercial antenna support structure may be increased in height beyond the height limits of the zoning district if located at least a distance from any property line equal to three times the height of the support structure, notwithstanding that the maximum height permitted being 125 feet."

47.    Skyway's application and the supplemental materials it submitted included substantial information regarding the Proposed Facility, including:

(a)    A letter of intent providing an overview of the application and requesting the Subject Property be rezoned to "PD" - Planned Development District with use and development of the subject property conforming to the regulations contained within Section 146-111 (Cl -Neighborhood Commercial District) and Section 146-137 (Communications antennas, satellite dishes and support structures/towers) of the City of McKinney Zoning Ordinance  except as set out in the Planned Development District Development Regulations.

(b)    Planned Development District Development Regulations.

(c)    Engineering Site Plans identifying the specific design, location, and schematics for the construction of the Proposed Facility;

(d)    Application for rezoning signed by the owner of the Subject Property;

(e)   The existing Planned Development District Development Regulations;

(f)   An Exhibit with the metes and bounds description for the Subject Property;

(g)   A copy of Ordinance 2001-08-089, which established the current zoning for the Subject Property;

(h)   Photo simulations of what the Proposed Facility will look like from multiple angles and distances;

(i)   A letter from T-Mobile's RF engineering department dated May 5, 2020 establishing the need for the Proposed Facility on the Subject Property;

(j)   Propagation maps developed and provided by T-Mobile's RF engineering department; and

(k)   A letter signed and sealed by a professional engineer explaining the structural design and failure contingencies for the Proposed Facility – commonly referred to as a "fall zone" letter.

48.   On May 26, 2020, a public hearing was held before the City's Planning and Zoning Commission (the "Commission") to consider Skyway's application.

49.   At that hearing, City Staff presented the application to the Commission and expressed that it did not support approval.

50.   Prior to and during the hearing, City Staff explained that PD zone developments do not have to comply strictly with the height and set-back regulations established for other districts in the City Code.

51.   City Staff explained that although set-back distances and requirements are commonly "loosened or massaged" and that there are other wireless communications facilities in the City of McKinney that have reductions in their set-back requirements, Staff was concerned

with the Proposed Facility's proximity to "neighborhood scaled uses, opining that it was just 'not compatible with the surrounding areas.'"

52.     In addition, Staff asserted safety concerns regarding the potential collapse of the Proposed Facility in close proximity to "neighborhood-scaled uses and residences."

53.     At the May 26, 2020 hearing, Skyway presented the merits of its application, including, but not limited to, evidence: regarding the growth in the need for wireless service generally; the specific need presented by T-Mobile's RF engineering team; the fact that T-Mobile and Skyway investigated and found no suitable collocation opportunities within the search ring; that Skyway found no other properties in the search ring with a willing landlord and zoning that would not require the same or, in most cases, greater zoning changes; and, that the fall zone letter explained the Proposed Facility is designed to collapse upon itself and thus does not present a safety risk to the Church, surrounding properties, or even the parking lot.

54.     Multiple Commission members asked if City Staff had been involved in evaluating other potential locations.

55.     As reflected in the Summary of the Commission meeting prepared by the City, City Staff responded that they had not been involved and that they do not typically direct people to other locations.  Rather, "Staff provides what the ordinance requires, asks questions that we know to ask, and that the proper documents have been submitted."

56.     Other than the requirement to rule out possible collocation, the City Code does not require that an applicant seeking to install a wireless communications facility evaluate alternative locations.

57.     Likewise, as the City Staff testimony at the May 26, 2020 Commission meeting intimates, the City Code does not require the City Staff to direct applicants to look at alternative

locations, and does not authorize the denial of an application based on either the failure of an applicant to investigate alternative sites, or the existence of a better alternative site.

58.     During the May 26, 2020 hearing, at least one Commissioner acknowledged that there was not a question of whether T-Mobile needed the Proposed Facility to satisfy its service needs.  Rather, that Commissioner, and others, focused on where the Proposed Facility should be located.  Without identifying any alternatives, the Commissioner questioned whether there were better locations within the search ring to construct the Proposed Facility.

59.     Ultimately, although several Commissioners expressed that it was a difficult decision, in part because the applicant had demonstrated a need to remedy a gap in service, the Commission voted to follow Staff's advice and recommend that the City Council deny the site based on concerns related to safety and the fit in a mostly residential area surrounded by "neighborhood-scaled uses."

60.     On June 16, 2020, the City Council considered Skyway's application.

61.     Again, City Staff presented their report to the City Council, along with the Commission's recommendation, including that the height and set-back requirements set forth in the City Code may be, and commonly are, deviated from in PD zoned developments.

62.     City Staff voiced the same concerns to the City Council as it had to the Commission.

63.     Despite an understanding that it would be allotted ample time to make its presentation in support of the Proposed Facility, the Mayor originally allotted Skyway just five minutes to make its presentation.  Upon Skyway's request for additional time, the Mayor agreed to allow ten minutes.

64.     In the abbreviated time, Skyway again presented evidence supporting the application, including addressing the following issues: the overall need for wireless service coverage; T-Mobile's specific need in this area of the city of McKinney; T-Mobile's search ring, within which a facility would be required to remedy their service gap; T-Mobile's and Skyway's finding that there are no collocation opportunities in the search ring capable of remedying T-Mobile's service gap; the need to reduce the set-backs in the Code's guidelines for the Subject Property, as well as other potential properties in the search ring; the stealth design of the tower and its slim profile; the engineer's "fall zone" letter explaining that in the unlikely event of failure, the Proposed Facility will not create a safety hazard for the surrounding area; and, the requirements of federal law.

65.     At the June 16, 2020 meeting, the Mayor asked Skyway if the height of the tower could be reduced, or if multiple towers at lower heights could be used to satisfy T-Mobile's service needs.

66.     Skyway responded that the proposed height is what is necessary to remedy T-Mobile's service gap.

67.     Skyway also explained that even multiple sites at lower heights would have the same issues with the City Code's set-back guidelines and would be contrary to other requirements of the City's code.  Specifically, multiple sites would be contrary to the Code's intent to: limit facilities installed in residential areas; limit the total number of facilities in the City; provide collocation capabilities for at least 2 additional carriers; and enhance providers' ability to provide service to the community quickly, effectively and efficiently.

68.     The Proposed Facility will accommodate at least two additional carriers, and thus limit the total number of facilities in the area, while enhancing at least two additional providers'

ability to provide service to the community quickly, effectively, and efficiently – all in furtherance of the City's intent expressed in the City Code.

69.     One City Council member asked about the availability of other specific large tracts of land in the search ring, to which Skyway responded that those particular properties had landlords that were not willing to lease space for the construction of a wireless communications facility.

70.     Another City Council member stated that he was "very familiar with the people who live there, and they do not want a tower," and therefore he was voting against it.

71.     Ultimately, the Council voted to deny the request.

72.     On July 7, 2020, the City Council adopted a resolution providing its written denial, and reasons therefore, in accordance with its obligation under 47 U.S.C. § 332(c)(7)(B)(iii) (the "Denial").  The City sent Skyway a copy of the Denial on July 10, 2020.

73.     The Denial asserts that its purpose is "to provide the substantial evidence in writing for the reasons undergirding the City Council's denial of the application."

74.     The Denial purports to articulate the evidence presented with the application.

75.     The Denial identifies the relevant Code requirements and guidelines applied to the application.

76.     The Denial asserts that there is substantial evidence to support the following findings and reasons on which the City Council's denial is based:

> (a)  The Proposed Facility "is not required to provide service to the area around and about the [Subject] Property as the area is already provided cell service by T-Mobile and other telecommunications providers."

(b)   The Proposed Facility's purpose "is to provide optimum in-building residential and in-building commercial service to eliminate buffering and dropped calls."

(c)   The Proposed Facility "is too tall for the area of the [Subject] Property on which the Applicant seeks to place it."

(d)   "The [Subject] Property for which the Applicant seeks the change in zoning is too small to accommodate a cell tower of the size proposed by the Applicant."

(e)   "Approval of the proposed Cell Tower in this residential area will not encourage the location of towers in non-residential areas or minimize the total number of towers throughout the City."

(f)   The Proposed Facility is adjacent to developed properties and "is not harmonious and compatible with the surrounding existing uses or proposed uses (single family residential neighborhoods with some predominantly neighborhood-scaled commercial uses)."

(g)   The Proposed Facility "is not normally associated with the use of property for residential uses or in residential neighborhoods."

(h)   The Proposed Facility does not meet the set-back standards set forth in Code Section 146-137(d)(4).

(i)   The Proposed Facility "is adjacent to and within approximately 130 feet of an existing church structure that also hosts a daycare facility and parking area, all located within the fall zone of the proposed antenna."

(j)   "The Applicant did not demonstrate that existing or proposed cell towers within, adjacent to, or in the vicinity of the proposed service area cannot accommodate the proposed Cell Tower."

(k)   "The Applicant did not produce any evidence or testimony of efforts to co-locate with other carriers on existing cell towers within, adjacent to, or in the vicinity of the service area."

(l)   "The Applicant did not provide evidence of alternative locations within, adjacent to, or in the vicinity of the proposed service area on which to locate a Cell Tower."

(m)   "The Applicant did not present evidence that 'further reasonable efforts are so likely to be fruitless that it is a waste of time even to try' to comply with City guidelines, zoning regulations and service-related concerns expressed by the City in denying this application."

(n)   "It is the Applicant's burden, not the City's burden to show and verify that alternative sites do, or do not, exist to accommodate the Applicant's service requests."

**Recent Federal Mandate Limits and Restricts the Factors and Issues That May Be Considered When Evaluating the Placement of New Wireless Communication Facilities**

77.   The FCC has recently limited the factors and issues that may be considered by the City in evaluating the placement of the proposed wireless communication facility.

78.   In *In the Matter of Acceleration of Broadband Deployment by Removing Barrier to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 (2018) (Sept. 27, 2018) (the "*FCC 2018 Order*"), the FCC issued a declaratory

ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that the standards adopted by the Circuit Courts and other courts applying Section 332(c)(7)(B)(i)(II) were incorrect. *FCC 2018 Order*, ¶ 40 n.94. Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement ***materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service.***" *Id.* ¶ 37 (emphasis added). The FCC made clear that the City effectively prohibits the provision of wireless services if it inhibits or limits the provider "not only when filling a coverage gap ***but also when densifying a wireless network, introducing new services or otherwise improving service capabilities***." *Id.* ¶ 37 (emphasis added). The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id.* n.86. The *FCC 2018 Order* also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

### The City's Denial Violates the Communications Act

79.    The City's Denial of the Skyway's application violates the Communications Act.

80.    The Denial asserts numerous conclusions unsupported by, and in some cases directly contradicted by, the evidence submitted to the City.

81.    The Denial asserts numerous standards that are inapplicable to the City's Code standards.

82.    The Denial asserts numerous standards that are incorrect and/or inapplicable to challenges of denials under the Communications Act.

83.    The City Code does not require an applicant to prove a specific need for service.

84.     With the exception of seeking and ruling out collocation opportunities, the City Code does not require an applicant to evaluate or identify potential alternative locations for construction of a new free-standing wireless communications facility.

85.     Skyway presented testimony and evidence to the Commission and City Council concerning T-Mobile's gap in service.

86.     There is no evidence disputing the existence of T-Mobile's asserted service gap in the vicinity of the Subject Property.

87.     Skyway presented testimony and evidence that there are no other properties in the vicinity of T-Mobile's service need that are leasable, buildable, and would not require the same or more rezoning and set-back adjustments.

88.     There is no record evidence disputing Skyway's assertions regarding the availability of alternatives.

89.     Skyway presented evidence that alternative sites in the vicinity of T-Mobile's service need would be prohibited by the City Code's set-back standards, unless the standard was altered.

90.     There is no evidence demonstrating the existence of viable alternatives that would remedy the T-Mobile's service gap and no viable alternative exists, or if one does exist it would not be less intrusive on the values the denial sought to protect than the proposed communications tower.

91.     There is no evidence in the written record suggesting that there are existing towers or alternative tower structures that are technically and commercially reasonably available for shared use or collocation.

92.     To the contrary, and in direct contradiction of the Denial's findings, the record evidence establishes that both T-Mobile and Skyway investigated the issue and found that there were no viable collocation sites.

93.     There is no substantial evidence in the record that the Proposed Facility "is not harmonious and compatible with the surrounding existing uses or proposed uses."

94.     The evidence in the record shows that the Proposed Facility is to be located in a parking lot of a church, with the ground compound designed to match the church design and the tower to be designed with the appearance of a flagless flagpole, and located across the street from another church.  Moreover, the evidence shows that the properties in the immediate vicinity of the Subject Site on Virginia Parkway are primarily zoned PD and accommodate a variety of commercial and professional, non-residential uses.

95.     There is no substantial evidence in the record that the Proposed Facility presents any safety risk.

96.     To the contrary, and in direct contradiction of the Denial's findings, the only record evidence addressing safety is a signed and sealed letter from a professional engineer explaining that the Proposed Facility does not present a risk of falling on any developed property or adjacent property.  Rather, in the unlikely event of failure, the Proposed Facility will collapse upon itself.

97.     There is no substantial evidence to dispute any of the evidence submitted by Skyway.

98.     Skyway has complied with all applicable procedural and substantive requirements of the City's Code.

99.     Skyway has exhausted all administrative remedies for addressing the City's actions.

100.     This Complaint is timely filed within thirty days of the City Council's final written Denial pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## COUNT I

### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Substantial Evidence)

101.     Skyway incorporates by reference and re-alleges the foregoing factual allegations in paragraphs 1 through 100 as if fully set forth herein.

102.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

103.     The inquiry to be made by this Court is whether the City's decision is authorized by applicable local regulations and supported by "substantial evidence."  A denial based on a finding that is not authorized or required by applicable local law cannot be supported by substantial evidence.  Moreover, if the terms of a local ordinance allow a municipality to deny a permit based on less than substantial evidence, or no evidence at all, and a permit is denied on that basis, the record would lack substantial evidence to justify the decision.

104.     At both the May 26, 2020 Commission meeting and the June 16, 2020 City Council meeting, Skyway presented substantial and uncontroverted evidence that the Proposed Facility justifies a zoning change to "PD" Planned Development District, Generally to Modify the Development Standards to Allow a Telecommunications Tower.

105.     Skyway presented substantial and uncontroverted evidence addressing the City's concerns regarding set-backs explaining that strict adherence to the set-back standards would prohibit a facility anywhere in the search ring.

106.    Skyway presented substantial and uncontroverted evidence addressing the City's concern regarding aesthetics, demonstrating that the site is designed to be the least aesthetically intrusive, and any other location in the search ring would present the same or more intrusive visual aesthetics.

107.    Skyway presented substantial and uncontroverted evidence addressing the City's safety concerns, explaining that the proposed facility does not present a safety hazard because it is designed to collapse upon itself.

108.    There is no substantial evidence in the record contradicting Skyway's evidence.

109.    The City Code does not require an applicant for a wireless communications facility to prove a service need.

110.    Skyway presented substantial and uncontroverted evidence regarding T-Mobile's need for the Proposed Facility.

111.    There is no substantial evidence in the record disputing that T-Mobile has a service need in the vicinity of the Subject Property.

112.    Skyway presented substantial and uncontroverted evidence that there were not available or satisfactory structures upon which to collocate an antenna to satisfy T-Mobile's service needs.

113.    There is no substantial evidence in the record that there is an available and satisfactory structure for collocation to remedy T-Mobile's service need.

114.    Besides the requirement to collocate if possible, the City Code does not require demonstration that there are no other suitable alternatives.

115.    Skyway presented substantial and uncontroverted evidence sufficient to determine that the Proposed Facility, more than any other potential alternative in the search ring, satisfies

the City's goals with respect to the deployment of wireless communications facilities as articulated in the City Code.

116.     There is no substantial evidence in the written record demonstrating the existence of viable alternatives that would remedy T-Mobile's service needs.

117.     The City's denial of the application for the proposed facility is not supported by substantial evidence contained in the written record.

118.     Consequently, the City's action is in violation of, and preempted by, Section 332(c)(7)(B)(iii) of the Communications Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the City to approve the application for the proposed facility.

**COUNT II**

**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition)**

119.     Skyway incorporates by reference and re-alleges the foregoing factual allegations in paragraphs 1 through 118 as if fully set forth herein.

120.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

121.     In the *FCC* 2018 *Order*, the FCC issued a declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that the standards adopted by the courts applying Section 332(c)(7)(B)(i)(II) were incorrect. *FCC 2018 Order*, ¶ 40 n.94.  Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement ***materially inhibits a provider's ability to engage in any***

*of a variety of activities related to its provision of a covered service.*" *Id.* ¶ 37 (emphasis added). The FCC made clear that the City effectively prohibits the provision of wireless services if it inhibits or limits a provider "not only when filling a coverage gap *but also when densifying a wireless network, introducing new services or otherwise improving service capabilities*." *Id.* ¶ 37 (emphasis added).  The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id.* n.86.  The *FCC 2018 Order* also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

122.    The *FCC 2018 Order* is currently in effect, and it governs Skyway's claim under 47 U.S.C. § 332(c)(7)(B)(i)(II).

123.    Under the *FCC 2018 Order*, T-Mobile has identified an area in which it needs to install a wireless facility to provide coverage, network capacity, and ultimately provide service. T-Mobile requested that Skyway find a property in that area and construct a communications tower that will meet T-Mobile's needs. The City's Denial of Skyway's rezoning application materially inhibits or limits Skyway's ability to install the proposed communications tower, and thus materially inhibits or limits T-Mobile's ability to provide its service at levels it deems appropriate. Accordingly, the City's Denial amounts to an effective prohibition of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

124.    In addition, or in the alternative, even following the standard for claims under Section 332(c)(7)(B)(i)(II) previously adopted by the courts, the City's Denial of Skyway's Application effectively prohibits T-Mobile from providing personal wireless service in violation of Section 332(c)(7)(B)(i)(II).

125.    Under either the current FCC standards, or the prior, stricter court designed standard, inhibiting or preventing a provider from remedying a gap in "in-building" service, whether residential or commercial, is an effective prohibition of service under the Communications Act.

126.    Skyway investigated alternative sites in and around the search ring within which T-Mobile determined that a significant gap exists and that a wireless communications facility must be located to remedy the significant gap in reliable service for the wireless carrier.

127.    No potential alternative site is available and technically feasible to remedy T-Mobile's service gap in a way that is less intrusive on the values the City's Denial sought to serve than is the Proposed Facility on the Subject Property.

128.    There is no existing structure in or near the vicinity of the Subject Property, or the search ring, that is both reasonably available and technologically feasible to remedy the significant gaps in personal wireless service in the area.

129.    The proposed communications tower on the Subject Property is the least intrusive means to close the significant gap in personal wireless service in light of the values sought to be served by the Denial.

130.    The proposed communications tower on the Subject Property is the least intrusive means to close the significant gap in personal wireless service in light of the values articulated in the City Code.

131.    The City's Denial of Skyway's application causes an effective prohibition of personal wireless service in the area surrounding the Proposed Facility on the Subject Property.

132.    Consequently, the City's denial of Skyway's application is in violation of, and preempted by, Section 332(c)(7)(b)(i)(II) of the Communications Act, and should be set aside and

enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order directing the City to approve the Specific Use Permit application for the proposed communications tower.

**WHEREFORE**, Skyway respectfully requests that the Court:

(a)   Conduct an expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

(b)   Adjudge that Defendants' actions and decisions violated federal law and are therefore void and invalid;

(c)   Overturn Defendants' decision denying the requested zoning change;

(d)   Issue an order requiring Defendants to grant the rezoning request application and all ancillary approvals and permits necessary for the construction of the proposed communications tower at the Subject Property; and

(e)   Grant such other and further relief in favor of Skyway as may be just and proper.

Respectfully Submitted,

SKYWAY TOWERS, LLC

By their attorneys,

_____/s/ Daniel P. Reing_____
Daniel P. Reing, Esq.
Bar Number: 73348
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
701 Pennsylvania Ave. NW, Suite 900
Washington D.C. 20004
Tel. 202-434-7450
Fax 202-434-7400
DPReing@mintz.com

William Bebb Francis, III, Esq.
Bar Number: 07360500
The Francis Law Firm, P.C.

112 E. Pecan Street, Suite 550
San Antonio, TX 78205
Tel. 210-222-1100
Fax 210-222-2468
wbfrancis@francislawfirm.com
*Counsel for Plaintiff*
Dated: August 5, 2020