UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SKYWAY TOWERS, LLC, a Delaware Limited Liability Company, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-cv-00594-SDJ |
| CITY OF MCKINNEY, TEXAS, the CITY COUNCIL OF THE CITY OF MCKINNEY, TEXAS, and Rainey Rogers, La'Shadion Shemwell, Scott Elliott, Rick Franklin, Charlie Philips, Frederick Frazier, and Mayor George Fuller in their official capacities as members of the City Council of the City of McKinney, Texas, | § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANT CITY OF McKINNEY'S ORIGINAL ANSWER
TO PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of McKinney, Texas ("City"), files this Original Answer to Plaintiff Skyway Tower, LLC's Complaint for Declaratory and Injunctive Relief and Expedited Treatment ("Complaint"), responding to each specific allegation of the Complaint pursuant to Fed.R.Civ.P. 8(b); to the extent the City does not address a specific allegation, the City expressly denies such allegation.

### I.     Nature of the Action

The prefacing section of the Complaint, "Nature of the Action," characterizes the suit Plaintiff has brought against the City. To the extent Plaintiff alleges the City's denial of Plaintiff's

application to construct a wireless telecommunications facility on land situated in a planned development district was improper or violated existing law; was not supported by substantial evidence contained in a written record; somehow prohibits the provision of personal wireless service in the vicinity of the Proposed Facility, thereby violating the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) ("Communications Act" or "Act"); or entitles Plaintiff to a court order granting Plaintiff's application for the Proposed facility, the City denies such allegations and opposes such relief.

The City opposes Plaintiff's request in the second paragraph of the same prefacing section.

## II.      Parties, Jurisdiction, and Venue

1.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegation of Paragraph 1 of Plaintiff's Complaint.

2.      The City admits the allegation of Paragraph 2 of Plaintiff's Complaint.

3.      The City admits the allegation of Paragraph 3 of Plaintiff's Complaint.

4.      The City admits the allegation of Paragraph 4 of Plaintiff's Complaint.

5.      The City admits the allegations of Paragraph 5 of Plaintiff's Complaint.

6.      The City admits the allegation of Paragraph 6 of Plaintiff's Complaint.

## III.      Statement of Facts

### Federal Statutory Control of Wireless Siting

7.      Paragraph 7 of Plaintiff's Complaint is a statement concerning law or legal contentions and requires no responsive pleading from the City. The City admits that the Communications Act, 47 U.S.C. § 332(c)(7)(B), speaks for itself, and denies any allegation or implication of wrongdoing that might be alleged in this paragraph.

8.      Paragraph 8 of Plaintiff's Complaint is a statement concerning law or legal contentions and requires no responsive pleading from the City. The City admits that the Communications Act, 47 U.S.C. § 332(c)(7)(B)(v), speaks for itself, and denies any allegation or implication of wrongdoing that might be alleged in this paragraph or that would require the Court to hear and decide this action on an expedited basis.

### The Wireless Communications Service Industry

9.      The City denies the allegation of Paragraph 9 of Plaintiff's Complaint that Plaintiff has leased space on any of its facilities to the City for first responders, law enforcement, or public safety agencies, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that same paragraph.

10.      The City admits the allegation of Paragraph 10 of Plaintiff's Complaint that T-Mobile provides wireless cellular service in the City of McKinney, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that same paragraph.

11.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of Plaintiff's Complaint.

12.      Paragraph 12 of Plaintiff's Complaint is a statement concerning law or legal contentions and requires no responsive pleading from the City. The City admits that the Communications Act, 47 U.S.C. §151, speaks for itself, and denies any allegation or implication of wrongdoing that might be alleged in this paragraph.

13.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of Plaintiff's Complaint.

14.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of Plaintiff's Complaint.

15.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of Plaintiff's Complaint.

16.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of Plaintiff's Complaint.

### The Proposed Facility & Application Process

17.      The City admits that Plaintiff represented to the Planning and Zoning Commission ("P&Z Commission") and the City Council that, as alleged in Paragraph 17 of Plaintiff's Complaint, T-Mobile had determined it had a gap in its ability to provide service within the city, but denies that the gap was significant or prohibited T-Mobile from providing reliable service in the City of McKinney. The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that same paragraph.

18.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of Plaintiff's Complaint, particularly given that a significant portion of the area is undeveloped and cannot be developed due to its location in a flood plain.

19.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of Plaintiff's Complaint.

20.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 of Plaintiff's Complaint.

21.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 of Plaintiff's Complaint.

22.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegation of Paragraph 22 of Plaintiff's Complaint.

23.     The City admits that Plaintiff made representations to the P&Z Commission and the City Council regarding the "search ring identified by T-Mobile," but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 23 of Plaintiff's Complaint.

24.     The City denies the allegation of the first sentence of Paragraph 24 of Plaintiff's Complaint, admits that portion of the second sentence of that same paragraph that the placement of a 99-foot tall commercial antenna tower requires the approval of a Specific Use Permit, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that same paragraph.

25.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 of Plaintiff's Complaint.

26.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 of Plaintiff's Complaint.

27.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 of Plaintiff's Complaint.

28.     The City admits the allegation of Paragraph 28 of Plaintiff's Complaint that the Subject Property is "located at 2705 Virginia Parkway, McKinney, Texas 75071[,]" denies the alleged characterization of "Staff's representation," and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that same paragraph concerning what conclusions Plaintiff may have reached based upon its own analysis.

29.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29 of Plaintiff's Complaint.

30.     The City admits the allegation of the first sentence of Paragraph 30 of Plaintiff's Complaint, and denies the remaining allegation of that same paragraph.

31.     The City denies the allegation of Paragraph 31 of Plaintiff's Complaint that a 99-foot tall commercial antenna tower is the "least intrusive [means] on the values upon which the City's denial was based, and the values espoused in the City Code." The City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of that same paragraph.

32.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 of Plaintiff's Complaint.

33.     The City denies the allegations of Paragraph 33 of Plaintiff's Complaint.

34.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 of Plaintiff's Complaint.

35.     The City denies the allegation of Paragraph 35 of Plaintiff's Complaint, and admits that Plaintiff contacted the City and scheduled a pre-submission development meeting to visit with City Staff, and then met with City Staff on October 10, 2018, regarding Plaintiff's desire to construct a 99-foot tall antenna tower on the Subject Property.

36.     The City denies the allegation of Paragraph 36 of Plaintiff's Complaint, and admits that Plaintiff submitted a draft of its application to the City on May 3, 2019, and its original application to the City on or about June 6, 2019, as well additional related documents on or about May 11, 2020.

37.     The City denies the allegation of Paragraph 37 of Plaintiff's Complaint, and admits that City Staff worked with Plaintiff's representatives intermittently regarding Plaintiff's ultimate zoning change request over the course of approximately a year and a half, and that Plaintiff's application requested that the City rezone the Subject Property from "PD - Planned Development District, Generally for RS-84 Single Family Residence Uses" to "PD - Planned Development District Uses with a base zoning of C-1 – Neighborhood Commercial District uses plus a telecommunications tower to permit the construction and operation of a 95-foot tall (to the top of steel) concealment unipole telecommunications tower with a 4-foot lightning rod (collectively the 'Cell Tower')."

38.     The City admits the allegation of Paragraph 38 of Plaintiff's Complaint that "Skyway's application proposes the installation of a stealth unipole telecommunications tower 95 feet tall with a 4 foot lightning rod for a total height of 99 feet"; that "all of the antennas and cabling are proposed to be contained on the interior of the unipole" so that the tower itself will have the appearance of an oversized, "flagless flagpole"; that the letter of intent/application "proposes to enclose the ground based equipment compound behind an 8 foot high masonry wall designed as a decorative split-faced wall to be painted to match the existing Church"; and that "the unipole and the ground compound surrounding it are proposed to be located on an island in the existing Church parking lot." The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of that same paragraph that "Skyway agreed to increase the height of the wall from the originally proposed 6 feet to 8 feet at the request of the City Staff" or that a "flagless flagpole" is "referred to in the industry as a 'slim stick.'"  The City denies the allegation of that same paragraph that "Skyway also agreed to include several Texas Sage shrubs (three feet in height at planting) around the exterior of the masonry compound wall," and admits that no

shrubs were originally proposed in Plaintiff's initial application submittal, that City Staff suggested more screening with the use of evergreen shrubs (not required to be Texas sage), and that Plaintiff ultimately proposed shrubs only on the north and south sides of the exterior wall.

39.     The first sentence of Paragraph 39 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits that Plaintiff has correctly set forth those certain provisions of City Code Section 146-94; however, while Section 146-94 contemplates PDs for certain proposals that do not "strictly conform to the requirements of this chapter," it also provides that those proposals *"may request approval* of a "PD" - Planned Development District," and that such proposals must have "a level of exceptional quality or innovation." The City admits that the City Code allows for some limited flexibility in zoning regulations in planned development districts where a level of exceptional quality or innovation is provided, and denies the remaining allegations of that same paragraph.

40.     Paragraph 40 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth the general purpose of City Code Section 146-137.

41.     Paragraph 41 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth those certain provisions of City Code Section 146-137(b).

42.     Paragraph 42 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which denies the first sentence of that paragraph as worded because the Code section actually provides in pertinent part:

> Collocation of antennas and antenna support structures shall be required. No new antennas and antenna support structures shall be permitted unless the applicant

> demonstrates to the reasonable satisfaction of the city that no existing antenna
> support structure can accommodate the applicant's proposed antenna.

City Code Section 146-137(e)(1). The City generally admits Plaintiff has correctly set forth those certain provisions of City Code Section 146-137(e)(1) that identify the types of evidence that may demonstrate the absence of the availability of another existing tower or structure that can accommodate an applicant's needs.

43.     Paragraph 43 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth that certain provision of City Code Section 146-137(e)(2).

44.     Paragraph 44 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth that certain provision of City Code Section 146-137(d)(4) regarding non-residential zoning districts.

45.     Paragraph 45 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth a certain portion of the provision of City Code Section 146-137(d)(4)(a)(2).

46.     Paragraph 46 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth that certain provision of City Code Section 146-137(d)(4)(b).

47.     The City denies the allegation of Paragraph 47 of Plaintiff's Complaint, and admits that Plaintiff submitted an initial application and supplemental materials regarding the Proposed Facility, which included, among other things:

(a)     A letter of intent requesting that the Subject Property be rezoned to "PD" - Planned Development District with use and development of the subject property conforming to the regulations contained within Section 146-111 (Cl -Neighborhood Commercial District) and Section 146-137 (Communications antennas, satellite dishes and support structures/towers) of the City of McKinney Zoning Ordinance except as set out in an attachment;

(b)     Engineering site plans identifying the design, location, and schematics for the construction of the Proposed Facility;

(c)     An application for rezoning signed by the owner of the Subject Property;

(d)     An Exhibit with the metes-and-bounds description for the Subject Property;

(e)     A copy of Ordinance 2001-08-089, which established the current zoning for the Subject Property;

(f)     Photo simulations of what the Proposed Facility would look like from multiple angles and distances;

(g)     A letter from T-Mobile's RF engineering department dated May 5, 2020 addressing the need for the Proposed Facility on the Subject Property;

(h)     Propagation maps; and

(i)     A letter signed and sealed by a professional engineer explaining the structural design and failure contingencies for the Proposed Facility – commonly referred to as a "fall zone" letter.

48.     The City denies the allegation of Paragraph 48 of Plaintiff's Complaint, and admits that on May 26, 2020, a public hearing was held before the City's P&Z Commission "to consider/discuss/ act on" Plaintiff's application.

49.     The City admits the allegation of Paragraph 49 of Plaintiff's Complaint, and further admits that City Staff at the hearing stated it did not support approval of the application based on, among other reasons, the incompatibility of the telecommunications tower with surrounding areas, and safety concerns related to the potential collapse of the tower in a parking lot located within close proximity to neighborhood scaled uses and residences.

50.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 of Plaintiff's Complaint, and admits that during the hearing before the P&Z Commission, City Staff explained that PD zone developments do not have to comply strictly with the height and set-back regulations established for other districts in the City Code.

51.     The City denies the allegation of Paragraph 51 of Plaintiff's Complaint, and admits that City Staff stated at the hearing that "typically, Staff is very open to knowing that there may be some distance requirements that have to be loosened or massaged a little bit," and cited one cellular tower in a largely undeveloped area that had a reduction in setbacks; however, Plaintiff's proposed telecommunications tower, according to Staff, was "not compatible with the surrounding areas."

52.     The City denies the allegation of Paragraph 52 of Plaintiff's Complaint, and admits that during the hearing, City Staff expressed safety concerns related to the potential collapse of the proposed telecommunications tower in a parking lot located within such close proximity to "neighborhood-scaled uses and residences."

53.     The City denies the allegation of Paragraph 53 of Plaintiff's Complaint, and admits that during the hearing on May 26, 2020, Plaintiff's legal counsel presented the merits of Plaintiff's application with an approximately 30-minute slide show presentation that included photographs and photo simulations/renderings, zoning maps, propagation maps that purported to depict existing

and future-needs cell coverage, letters, studies, and other documents. The City further admits that Plaintiff's counsel urged that approval of Plaintiff's application was appropriate based on growth in the need for wireless service generally; T-Mobile's "justification letter," which stated there was a need for the service requested by T-Mobile's radio frequency ("RF") team; the representation that both Plaintiff and T-Mobile had investigated and found no suitable collocation opportunities, at the tower height requested, within the one-half mile-radius search ring; and Plaintiff's Engineer's Sealed Letter, dated May 7, 2020, from Michael F. Plahovinsak, the text of which speaks for itself. The City further admits that the May 26, 2020 hearing on Plaintiff's application, including City Staff presentation, presentation by Plaintiff's counsel, a follow-up question-and-answer session between counsel, City Staff, and the Commission, a public hearing, and deliberations by the Commissioners, was approximately one hour and 15 minutes.

54.     The City admits the allegation of Paragraph 54 of Plaintiff's Complaint.

55.     The City denies the allegation of Paragraph 55 of Plaintiff's Complaint, and admits that City Staff advised the P&Z Commission, in response to a question of whether there was a better site for the communications facility, that Staff "typically does not direct [people] to other locations," that it "provides what the ordinance specifically requires, [and it] asks the questions that [it] knows to ask," but ultimately "it's up to [the applicant]" to make that determination.

56.     The City denies the allegation of Paragraph 56 of Plaintiff's Complaint, and admits that the City Code speaks for itself.

57.     The City denies the allegation of Paragraph 57 of Plaintiff's Complaint, and admits that City Staff testified at the hearing. The City lacks knowledge or information sufficient to form a belief as to the truth of the allegation of that same paragraph as to what Plaintiff believes Staff's comments "intimate[d]." The City admits that the City Code speaks for itself.

58.    The City denies the allegation of Paragraph 58 of Plaintiff's Complaint, and admits that one Commissioner acknowledged Plaintiff's counsel representation that T-Mobile needed a means by which to expand its service and the Commission chair asked if there were other locations for the tower; Plaintiff's counsel responded, "No."

59.    The City denies the allegation of Paragraph 59 of Plaintiff's Complaint, and admits that at least two Commissioners expressed it was a difficult decision, but that the Commission voted to deny Plaintiff's rezoning request by a vote of 7-0-0, consistent with City Staff's recommendation.

60.    The City denies the allegation of Paragraph 60 of Plaintiff's Complaint, and admits that on June 16, 2020, the City Council met in public session to "consider/discuss/act on" Plaintiff's application.

61.    The City denies the allegation of Paragraph 61 of Plaintiff's Complaint, and admits that City Staff presented their report to the City Council, along with the P&Z Commission's recommendation, advising that it is "not unprecedented for [City Staff] to consider" adjustments to City Code height and set-back requirements through the rezoning process, but that the "scale and proximity" of this project to property lines in a neighborhood district caused concerns with City Staff.

62.    The City admits the allegation of Paragraph 62 of Plaintiff's Complaint.

63.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 63 of Plaintiff's Complaint, and admits that during the hearing before the City Council, Mayor Fuller prefaced his comments by stating that the Council was aware of Plaintiff's presentation to the P&Z Commission and "had the benefit to see that presentation." The City further admits that following remarks from City Staff, Mayor

Fuller initially advised Plaintiff's legal counsel that he would be allowed five minutes to make his presentation in support of the rezoning application. The City admits the allegation of the second sentence of that same paragraph, and further admits that, ultimately, Plaintiff's counsel was given a total of approximately 15 minutes for his presentation before a lengthy question-and-answer session took place during the public hearing, and that the agenda item was before the City Council for more than 30 minutes.

64.     The City denies the allegation of Paragraph 64 of Plaintiff's Complaint, and admits that during the June 16, 2020 City Council meeting, Plaintiff's legal counsel presented the merits of Plaintiff's application with related evidence, most of which already had been presented to the P&Z Commission in May 2020, and which asserted various federal law implications.

65.     The City admits the allegation of Paragraph 65 of Plaintiff's Complaint.

66.     The City admits the allegation of Paragraph 66 of Plaintiff's Complaint.

67.     The City denies the allegations of Paragraph 67 of Plaintiff's Complaint, and admits that Plaintiff's counsel addressed issues concerning why he believed towers with lower heights would be unacceptable for T-Mobile's needs and contrary to his interpretation of the intent of the City Code.

68.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68 of Plaintiff's Complaint, and admits that the substance of what Plaintiff alleges is what Plaintiff's counsel told the City in support of its argument that Plaintiff's application should be approved.

69.     The City denies the allegation of Paragraph 69 of Plaintiff's Complaint, and admits that one City Councilmember asked about the availability of two large tracts of land in the search ring, to which Plaintiff's counsel replied that one was owned by a church and the other by a school,

each of which had been contacted, but that neither of which was willing to lease space to Plaintiff for the construction of a wireless communications facility.

70.     The City denies the allegation of Paragraph 70 of Plaintiff's Complaint, and admits that one City Councilmember stated he had lived and worked in the area of the proposed site for almost 30 years, that he was "very familiar with the people who live there, and they do not want a tower," that he was "looking out for the citizens of McKinney," and that he was voting against it.

71.     The City admits the allegation of Paragraph 71 of Plaintiff's Complaint.

72.     The City denies the allegations of Paragraph 72 of Plaintiff's Complaint, and admits that it sent Plaintiff a copy of a letter on June 26, 2020, explaining that City Staff planned to take a resolution forward to the City Council on July 7, 2020, so that the City could provide Plaintiff with a written decision by the City Council in satisfaction of the Communications Act. The City further admits that the City Council considered, discussed, acted on, and adopted City of McKinney Resolution #2020-07-089 R on July 7, 2020, memorializing its denial of Plaintiff's application, and the reasons therefor, in accordance with 47 U.S.C. § 332, including § 332(c)(7)(B)(iii) ("Resolution"). The City further admits that it sent Plaintiff a copy of a zoning letter of denial on July 10, 2020, together with a certified copy of the Resolution and supporting documentation.

73.     The City denies the allegations of Paragraph 73 of Plaintiff's Complaint, and admits that the Resolution speaks for itself; however, the Resolution also states, in part, that its purpose is "to provide the substantial evidence in writing for the reasons undergirding the City Council's denial of the application...."

74.     The City denies the allegation of Paragraph 74 of Plaintiff's Complaint, and admits that the Resolution speaks for itself; however, the Resolution also, in part, expressly identifies

evidence presented by Plaintiff with its application and incorporates all such evidence provided to the P&Z Commission and City Council.

75.     The City denies the allegation of Paragraph 75 of Plaintiff's Complaint, and admits that the Resolution speaks for itself; however, the Resolution also, in part, identifies certain federal statutory law and relevant City Code requirements and guidelines applicable to the application.

76.     The City denies the allegations of Paragraph 76 of Plaintiff's Complaint, and admits that the Resolution identifies certain substantial evidence relied on by the City Council in support of its denial of Plaintiff's applications, which findings included the following:

A.     The proposed Cell Tower is not required to provide service to the area around and about the Property as the area is already provided cell service by T-Mobile and other telecommunications providers.

B.     The purpose of this Cell Tower is to provide optimum in-building residential and in-building commercial service to eliminate buffering and dropped calls.

C.     The proposed Cell Tower is too tall for the area of the Property on which the Applicant seeks to place it.

D.     The Property for which Applicant seeks the change in zoning is too small to accommodate a cell tower of the size proposed by the Applicant.

E.     Approval of the proposed Cell Tower in this residential area will not encourage the location of towers in non-residential areas or minimize the total number of towers throughout the City.

F.     The proposed Cell Tower is adjacent to some developed property and the proposed Cell Tower is not harmonious and compatible with the surrounding existing uses or proposed uses (single family residential neighborhoods with some predominantly neighborhood-scaled commercial uses).

G.     The Cell Tower use requested on the Property by the Applicant is not normally associated with the use of property for residential uses or in residential neighborhoods. Moreover, there is no feasible way in which to address the setback requirements mandated by the extreme height of the proposed Cell Tower.

H.     The Property is currently zoned for residential uses and is currently home to a church that also houses a pre-school. According to the City's RS-84 Single Family Residential district zoning requirements, the proposed Cell Tower is not

reasonable, for the reasons articulated above. In addition, the proposed Cell Tower is also not reasonable in the base C-1 – Neighborhood Commercial district that also has a maximum height limitation of thirty-five feet (35'), for the reasons articulated above.

I.       The proposed 95-foot tall Cell Tower is adjacent to and within approximately one hundred thirty feet (130') of an existing church structure that also hosts a daycare facility and parking area, all located within the fall zone of the proposed antenna. Therefore, for the reasons listed above, the impact on the surrounding area has not been mitigated.

J.       The Applicant did not demonstrate that existing or proposed cell towers within, adjacent to, or in the vicinity of the proposed service area cannot accommodate the proposed Cell Tower.

K.       The Applicant did not produce any evidence or testimony of efforts to co-locate with other carriers on existing cell towers within, adjacent to, or in the vicinity of the service area.

L.       The Applicant did not provide evidence of alternative locations within, adjacent to, or in the vicinity of the proposed service area on which to locate a Cell Tower.

M.       While the Applicant provided a propagation map relative to the location of the Cell Tower at the proposed site, no other alternative or co-location sites were presented to the City for consideration. In addition, the propagation maps indicated that the proposed service area is already fully served by T-Mobile and that the purpose of the proposed Cell Tower is 'to provide optimum in-building residential and in-building commercial service to eliminate buffering and dropped calls.'

N.       The Applicant did not present evidence that 'further reasonable efforts are so likely to be fruitless that it is a waste of time even to try' to comply with City guidelines, zoning regulations and service-related concerns expressed by the City in denying this application.

O.       It is the Applicant's burden, not the City's burden, to show and verify that alternative sites do, or do not, exist to accommodate the Applicant's service requests.

P.       None of the evidence presented by the Applicant reflects a 'significant gap' in actual service in the proposed service area and indeed, the Applicant provided no evidence of such gap, either in terms of physical size, geographic location or number of users. The only 'significant gap' expressed by the Applicant regarding the proposed service area was Applicant's desire to provide 'optimum in-building residential and in-building commercial service' to eliminate buffering and dropped calls in the proposed service area.

Q.     In making these findings, the City Council relied upon the application and all related submittals to date by the Applicant, the evidence adduced at all public hearings before the Planning and Zoning Commission and City Council, as well as statements and related information from the Applicant, City Staff, and the public including correspondence and documentation presented by the Applicant, all of which is incorporated herein by reference.

**Recent Federal Mandate Limits and Restricts the Factors and Issues That May Be Considered When Evaluating the Placement of New Wireless Communication Facilities**

77.     Paragraph 77 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City; however, to the extent this Paragraph seeks to allege any wrongdoing by the City, the City denies that any action it has taken, including its denial of Plaintiff's application, was improper or violated existing law.

78.     Paragraph 78 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City; however, to the extent this paragraph seeks to allege any wrongdoing by the City, the City denies that any action it has taken, including its denial of Plaintiff's application, was improper or violated existing law. The City admits that the text of the ruling in *In the Matter of Acceleration of Broadband Deployment by Removing Barrier to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 (2018) (Sept. 27, 2018) ("FCC 2018 Order"), speaks for itself.

**The City's Denial Does Not Violate the Communications Act**

79.     The City denies the allegation of Paragraph 79 of Plaintiff's Complaint.

80.     The City denies the allegation of Paragraph 80 of Plaintiff's Complaint.

81.     The City denies the allegation of Paragraph 81 of Plaintiff's Complaint.

82.     The City denies the allegation of Paragraph 82 of Plaintiff's Complaint.

83.     The City denies the allegation of Paragraph 83 of Plaintiff's Complaint, and admits that the City Code speaks for itself.

84.     The City denies the allegation of Paragraph 84 of Plaintiff's Complaint, and admits that the City Code speaks for itself.

85.     The City admits the allegation of Paragraph 85 of Plaintiff's Complaint.

86.     The City denies the allegation of Paragraph 86 of Plaintiff's Complaint, and admits that there is no evidence disputing the existence of T-Mobile's asserted service in the vicinity of the Subject Property.

87.     The City denies the allegation of Paragraph 87 of Plaintiff's Complaint.

88.     The City denies the allegation of Paragraph 88 of Plaintiff's Complaint.

89.     The City denies the allegation of Paragraph 89 of Plaintiff's Complaint.

90.     The City denies the allegation of Paragraph 90 of Plaintiff's Complaint.

91.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 91 of Plaintiff's Complaint, and admits that the City Council and Plaintiff's counsel discussed existing towers and alternative tower structures during the Council hearing.

92.     The City denies the allegation of Paragraph 92 of Plaintiff's Complaint.

93.     The City denies the allegation of Paragraph 93 of Plaintiff's Complaint.

94.     The City denies the allegation of Paragraph 94 of Plaintiff's Complaint, and admits that Plaintiff proposed siting the Proposed Facility in the parking lot of a church. The City further admits that some properties in the immediate vicinity of the Subject Site are zoned as PD districts, and include a variety of residential, non-residential, and commercial uses.

95.     The City denies the allegation of Paragraph 95 of Plaintiff's Complaint.

96.     The City denies the allegation of Paragraph 96 of Plaintiff's Complaint, and admits that evidence in the record included Plaintiff's Engineer's Sealed Letter, dated May 7, 2020, from

Michael F. Plahovinsak, the text of which speaks for itself. The City further admits that in his letter Mr. Plahovinsak stated that, in the event of a pole failure due to certain weather circumstances, the 99-foot high pole would "yield/buckle at the 71' elevation," "assuming the pole will be fabricated according to my design and well maintained," and that "the yielded section would most likely remain connected and hang from the standing section effectively collapsing on itself."

97.    The City denies the allegation of Paragraph 97 of Plaintiff's Complaint.

98.    The City admits the allegation of Paragraph 98 of Plaintiff's Complaint.

99.    The City admits the allegation of Paragraph 99 of Plaintiff's Complaint.

100.    The City admits the allegation of Paragraph 100 of Plaintiff's Complaint.

## Count I

### (47 U.S.C. § 332(c)(7)(B)(iii) – Substantial Evidence)

101.    Paragraph 101 of Plaintiff's Complaint ostensibly incorporates by reference all preceding factual allegations made in Plaintiff's Complaint. The City adopts and incorporates, in a corresponding manner, all pleadings responsive to those allegations incorporated by Plaintiff.

102.    Paragraph 102 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth that certain provision of 47 U.S.C. § 332(c)(7)(B)(iii); however, the City denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

103.    Paragraph 103 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City; however, the City denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

104.    The City denies the allegation of Paragraph 104 of Plaintiff's Complaint.

105.    The City denies the allegation of Paragraph 105 of Plaintiff's Complaint.

106.    The City denies the allegation of Paragraph 106 of Plaintiff's Complaint.

107.    The City denies the allegation of Paragraph 107 of Plaintiff's Complaint.

108.    The City denies the allegation of Paragraph 108 of Plaintiff's Complaint.

109.    The City denies the allegation of Paragraph 109 of Plaintiff's Complaint, and admits that the City Code speaks for itself.

110.    The City denies the allegation of Paragraph 110 of Plaintiff's Complaint.

111.    The City denies the allegation of Paragraph 111 of Plaintiff's Complaint, and admits that the record speaks for itself.

112.    The City denies the allegation of Paragraph 112 of Plaintiff's Complaint.

113.    The City denies the allegation of Paragraph 113 of Plaintiff's Complaint, and admits that the record speaks for itself.

114.    The City denies the allegation of Paragraph 114 of Plaintiff's Complaint, and admits that the City Code speaks for itself.

115.    The City denies the allegation of Paragraph 115 of Plaintiff's Complaint.

116.    The City denies the allegation of Paragraph 116 of Plaintiff's Complaint, and admits that the record speaks for itself.

117.    The City denies the allegation of Paragraph 117 of Plaintiff's Complaint.

118.    Paragraph 118 of Plaintiff's Complaint sets forth the relief Plaintiff seeks by way of this action and thus requires no responsive pleading; however, the City denies that its denial of Plaintiff's application was improper or violated existing law, thereby entitling Plaintiff to any relief.

## Count II

### (47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition)

119.    Paragraph 119 of Plaintiff's Complaint ostensibly incorporates by reference all preceding factual allegations made in Plaintiff's Complaint. The City adopts and incorporates, in a corresponding manner, all pleadings responsive to those allegations incorporated by Plaintiff.

120.    Paragraph 120 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits Plaintiff has correctly set forth that certain provision of 47 U.S.C. § 332(c)(7)(B)(i)(II); however, the City denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

121.    Paragraph 121 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City, which generally admits that the "FCC 2018 Order" speaks for itself; however, the City denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

122.    Paragraph 122 of Plaintiff's Complaint avers matters concerning law or legal contentions and thus requires no responsive pleading from the City. The City, however, lacks knowledge or information sufficient to form a belief as to the truth of the allegations of that same paragraph and, further, denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

123.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first two sentences of Paragraph 126 of Plaintiff's Complaint, and denies the remaining allegations of that same paragraph.

124.    The City denies the allegation of Paragraph 124 of Plaintiff's Complaint.

125.    The City denies the allegation of Paragraph 125 of Plaintiff's Complaint to the extent said allegation is intended to be an allegation against the City's actions.

126.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 126 of Plaintiff's Complaint.

127.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 127 of Plaintiff's Complaint.

128.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 128 of Plaintiff's Complaint.

129.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 129 of Plaintiff's Complaint, but denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

130.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 130 of Plaintiff's Complaint, but denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

131.    The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 131 of Plaintiff's Complaint, but denies that any action taken by the City, including its denial of Plaintiff's application, was improper or violated existing law.

132.    The City denies the allegation of the first sentence of Paragraph 132 of Plaintiff's Complaint. The second sentence of that same Paragraph states the relief Plaintiff seeks by way of this action and thus requires no responsive pleading; however, the City denies that Plaintiff is entitled to any relief.

WHEREFORE, PREMISES CONSIDERED, Defendant City of McKinney, Texas prays that Plaintiff Skyway Towers, LLC, take nothing by this suit and that all relief requested by

Plaintiff be denied; that Defendant recover from Plaintiff its reasonable and necessary attorney's fees and all costs of suit; and that the Court grant Defendant all other relief, general or special, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

By:  /s/ Kent S. Hofmeister

**Kent S. Hofmeister**
State Bar No. 09791700
khofmeister@bhlaw.net
**Robert F. Brown**
State Bar No. 03164725
rbrown@bhlaw.net
**Michael L. Martin**
State Bar No. 4108956
mmartin@bhlaw.net

**BROWN & HOFMEISTER, L.L.P.**
740 East Campbell Road, Suite 800
Richardson, Texas 75081
(214) 747-6100 (Telephone)
(214) 747-6111 (Telecopier)

*Attorneys for Defendant*
*City of McKinney, Texas*

## CERTIFICATE OF SERVICE

A copy of the foregoing document was served electronically through the court's ECF system on all counsel of record on September 4, 2020.

/s/Kent S. Hofmeister
Kent S. Hofmeister